## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**AARON BURNS,**

       **Petitioner,**

**v.**                           **Case No. 5:15cv65-RV/CAS**

**JULIE L. JONES, Secretary,**
**Department of Corrections,**

       **Respondent.**
_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

Petitioner, Aaron Burns, a prisoner in the custody of the Florida

Department of Corrections, proceeding pro se under the mailbox rule, filed

a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on March

30, 2015. ECF No. 1. Respondent filed an answer with exhibits on

December 1, 2015. ECF No. 11. Pursuant to leave to amend, Petitioner

filed an amended § 2254 petition under the mailbox rule on February 24,

2016. ECF No. 15. Respondent filed an amended answer on March 23,

2016, referring to exhibits containing the state court record filed with

Respondent's first answer. ECF No. 17. No reply was filed, although leave

was given to do so. ECF No. 13. Petitioner challenges his convictions and

sentences entered by the Circuit Court, Fourteenth Judicial Circuit, in and for Bay County, Florida, after jury trial.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration of all the issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this case.  *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts.  For the reasons set forth herein, the pleadings and attachments before the Court show that Petitioner is not entitled to federal habeas relief and this amended § 2254 petition should be denied.

## Background and Procedural History

Petitioner, Aaron Burns, was charged by Amended Information with Count 1, sexual battery with a deadly weapon upon J.E.M., a person 12 years of age or older, occurring on or about July 27, 2009, in violation of sections 794.011(3), 794.011(4)(b), and 794.011(4)(f), Florida Statutes; and Count 2, kidnapping of J.E.M., on or about July 27, 2009, in violation of

section 787.01(1)(a), Florida Statutes.  Ex. A at 38.[1]  Jury trial was held on

February 18-19 and 25-16, 2010.  Exs. G-M.

By verdict entered on February 26, 2010, Petitioner was found guilty

of the lesser included offense of sexual battery of a physically incapacitated

person and guilty as charged of kidnapping.  Ex. A at 167-68.  Judgment

was entered on May 27, 2010, and Petitioner was sentenced as a prison

releasee reoffender pursuant to section 775.082, Florida statutes, to a term

of 30 years in prison on Count 1 and life in prison on Count 2, to run

concurrently with the sentence for Count 1, with credit for time served of

304 days.  Ex. B at 251-60.  Petitioner appealed to the state First District

Court of Appeal, Ex. O, which affirmed per curiam without a written opinion

on December 29, 2011.[2]  Ex. R.  The mandate was issued on January 17,

2012.  Ex. S.  *See* Burns v. State, 76 So. 3d 294 (Fla. 1st DCA 2011)

---

[1] Hereinafter, citations to the state court record, "Ex. –," refer to exhibits A through QQ submitted with Respondent's first response, ECF No. 11, unless otherwise indicated.

[2] The claims of error raised on direct appeal were: (1) whether conviction for sexual battery with victim physically incapacitated violated due process; (2) whether the trial court erred in excluding the testimony of Larry Burns regarding a prior inconsistent statement of the victim; (3) whether the trial court erred in excluding the testimony of Wanda Hollinger regarding a prior inconsistent statement of the victim; (4) whether the trial court erred in denying the motion for new trial; (5) whether the trial court erred in various evidentiary rulings; (6) whether the prosecutor's improper questions denied Petitioner a fair trial and constitute fundamental error; (6) whether the prosecutor's comments during closing argument denied Petitioner a fair trial and constitute fundamental error; and (7) whether the cumulative effect of the prosecutor's improper conduct and other trial court errors constitute fundamental error.  Ex. O.

(table).  Petitioner's pro se petition for writ of certiorari to the United States

Supreme Court, Ex. AA, was denied on May 29, 2012.  Ex. CC.

Petitioner, pro se, filed a motion for post-conviction relief under

Florida Rule of Criminal Procedure 3.850 on July 27, 2012.  Ex. T at 1-44.

The trial court summarily denied the motion in part and granted it in part by

order, with attachments, on February 12, 2013.  Ex. U at 137-327; Ex. V at

328-433.  In granting relief on one ground, after the State conceded there

was insufficient evidence to find the victim was "physically incapacitated" as

defined by section 794.011(1)(j), the trial court found trial counsel was

ineffective in failing to argue the insufficiency of that evidence at trial to

prove sexual battery of a physically incapacitated person.  Ex. U at 141.

The trial court explained:

> However, because there was sufficient evidence to sustain a
> finding of guilt for the necessary lesser included offense of
> sexual battery, pursuant to Rule 3.620, Florida Rules of
> Criminal Procedure, the remedy is not to grant the Defendant a
> new trial but to adjudge the Defendant guilty of sexual battery.
> *See* Wallace v. State, 66 So. 3d 1086 (Fla. 3d DCA 2011); Fla.
> Stat. § 974,011; Std. Jury Instructions in Crim. Cases 11.2.
> Therefore, the Defendant is entitled to be resentenc[ed] on the
> lesser included offense of sexual battery.

Ex. U at 141. Petitioner appealed and the state First District Court of Appeal affirmed per curiam without explanation on August 27, 2013.[3] Ex. W. *See* Burns v. State, 122 So. 3d 870 (Fla. 1st DCA 2013) (table).

As a result of the trial court granting relief in part on Petitioner's Rule 3.850 motion, Petitioner was resentenced on January 27, 2014, on Count 1 to 15 years in prison, with his life sentence for Count 2 remaining unchanged. Ex. HH at 781-87. On February 11, 2014, Petitioner appealed to the state First District Court of Appeal, Ex. JJ, which affirmed on August 8, 2014, Ex. NN, and issued the mandate on September 3, 2014.[4] Ex. OO. *See* Burns v. State, 146 So. 3d 1174 (Fla. 1st DCA 2014) (table).

On March 3, 2014, Petitioner filed a petition for writ of habeas corpus in the state First District Court of Appeal alleging ineffective assistance of appellate counsel by failing to raise as fundamental error error on direct appeal the trial court's failure to strike an openly biased juror for cause; and by failing to raise as error the issue of instances of prosecutorial

---

[3] No brief was filed in the appeal from the trial court's order on Petitioner's Rule 3.850 motion, although none was required under the state rules of procedure. The First District Court of Appeal held in Watson v. State, 975 So. 2d 572 (Fla. 1st DCA 2008), that where a defendant does not file a brief in an appeal from summary denial of a Rule 3.850 motion, the appellate court is still required to investigate all possible means of relief. *Id.* at 573 n.1. *See also* Florida Rule of Criminal Procedure 9.141(b)(2)(C).

[4] On appeal from the resentencing, Petitioner raised as error the trial court's failure to grant a new trial instead of entering judgment and sentence for sexual battery based on the court's prior finding in the Rule 3.850 proceeding that the evidence supported a conviction for the lesser included offense of sexual battery. Ex. JJ; Ex. II at 813.

misconduct in opening and closing argument. EX. PP. On July 9, 2014,

the state appellate court denied the petition on the merits. Ex. QQ. <u>See</u>

<u>Burns v. State</u>, 141 So. 3d 1253 (Fla. 1st DCA 2014).

Petitioner filed his amended petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2254 in this Court raising the following six grounds

for relief:

(1) Whether the trial court erred in excluding the testimony of Larry Burns regarding prior inconsistent statements of the alleged victim. ECF No. 15 at 5.

(2) Whether the trial court erred in excluding the testimony of Wanda Hollinger regarding prior inconsistent statements of the alleged victim. ECF No. 15 at 8.

(3) Whether the trial court erred by failing to grant a new trial on Counts 1 and 2 instead of adjudicating the Petitioner guilty of a lesser included offense pursuant to Florida Rule of Criminal Procedure 3.620. ECF No. 15 at 10.

(4) Petitioner's state and federal Constitutional rights to speedy trial were violated, thereby entitling Petitioner to dismissal of the case and discharge from custody. Alternatively, trial counsel rendered ineffective assistance in failing to timely move for speedy trial after the speedy trial time period had expired, thus depriving Petitioner of his Sixth and Fourteenth Amendment rights. ECF No. 15 at 12.

(5) Whether Petitioner's Sixth Amendment right to trial by an impartial jury was violated due to the presence of a biased juror. Alternatively, trial counsel rendered ineffective assistance by failing to ensure removal of a biased juror. ECF No. 15 at 14.

(6) Trial counsel rendered ineffective assistance by failing to impeach the alleged victim with prior inconsistent statements that were material to the defense. ECF No. 15 at 16.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and

Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant

habeas corpus relief for persons in state custody only under certain

specified circumstances.  Section 2254(d) provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not
> be granted with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the adjudication of
> the claim—
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. § 2254(d).  *See also* Cullen v. Pinholster, 563 U.S. 170, 181

(2011); Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011).

"Under the 'contrary to' clause, a federal habeas court may grant the

writ if the state court arrives at a conclusion opposite to that reached by this

Court on a question of law or if the state court decides a case differently

than this Court has on a set of materially indistinguishable facts."  Williams

v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring).  "Under

the 'unreasonable application' clause, a federal habeas court may grant the

writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413 (O'Connor, J., concurring).

The Supreme Court has explained that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Harrington v. Richter, 562 U.S. 86, 102 (2011). The Court stated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id.* at 102-03 (citation omitted). The federal court employs a " 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.' " Pinholster, 563 U.S. at 181 (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." O'Sullivan v.

Boerckel, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b).  The Petitioner

must have apprised the state court of the federal constitutional claim, not

just the underlying facts of the claim or a "somewhat similar state-law

claim."  Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998) (quoting

Anderson v. Harless, 459 U.S. 4, 5-6 (1982)).  In order for remedies to be

exhausted, "the petitioner must have given the state courts a 'meaningful

opportunity' to address his federal claim."  Preston v. Secretary, Florida

Dep't of Corr., 785 F.3d 449, 457 (11th Cir. 2015) (quoting McNair v.

Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005)).  Petitioner must "fairly

present" his claim in each appropriate state court in order to alert the state

courts to the federal nature of the claim.  Duncan v. Henry, 513 U.S. 364,

365 (1995); Picard v. Connor, 404 U.S. 270, 275 (1971).

In order to obtain review where a claim is unexhausted and, thus,

procedurally defaulted, the Petitioner must show cause for the default and

prejudice resulting therefrom or a fundamental miscarriage of justice.

Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993).  In order to demonstrate

cause, Petitioner must show that an "external impediment, whether it be

governmental interference or the reasonable unavailability of the factual

basis for the claim, must have prevented petitioner from raising the claim."

Alderman v. Zant, 22 F.3d 1541, 1551 (1994) (citing Murray v. Carrier, 477

U.S. 478, 488 (1986)); *see also* McCleskey v. Zant, 499 U.S. 467, 497 (1991) (emphasizing that the external impediment must have prevented the petitioner from raising the claim).  A federal court may grant a habeas petition on a procedurally defaulted claim without a showing of cause or prejudice if necessary to correct a fundamental miscarriage of justice. Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003).  In order to satisfy the miscarriage of justice exception, the Petitioner must show that a constitutional violation has occurred that "probably resulted in a conviction of one who is actually innocent"—that it is more likely than not that no reasonable juror would have convicted him—which is a stronger showing than is necessary to establish prejudice.  *See* Schlup, 513 U.S. at 327. This standard "thus ensures that petitioner's case is truly 'extraordinary.' " *Id.* (citing McCleskey, 499 U.S. at 494).  Such a case is "extremely rare." *Id.* at 324.

This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."  Pinholster, 563 U.S. at 181. The state court's factual findings are entitled to a presumption of correctness and to rebut that presumption, the Petitioner must show by clear and convincing evidence that the state court determinations are not fairly supported by the record.  *See* 28 U.S.C. § 2254(e)(1).  However, "it is

not the province of a federal habeas court to reexamine state-court

determinations on state-law questions" and "[i]n conducting habeas review,

a federal court is limited to deciding whether a conviction violated the

Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502

U.S. 62, 67-68 (1991). *See also* Swarthout v. Cooke, 562 U.S. 216, 221

(2011) ("[W]e have long recognized that 'a "mere error of state law" is not a

denial of due process.' " (quoting Engle v. Isaac, 456 U.S. 107, 121, n.21

(1982))).

For claims of ineffective assistance of counsel, the United States

Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was
> deficient. This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment. Second,
> the defendant must show that the deficient performance
> prejudiced the defense. This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial,
> a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984). To demonstrate

deficient performance, a "defendant must show that counsel's performance

fell below an objective standard of reasonableness." *Id.* at 688. Counsel is

"strongly presumed to have rendered adequate assistance and made all

significant decisions in the exercise of reasonable professional judgment."

Burt v. Titlow, 134 S. Ct. 10, 17 (2013) (quoting Strickland, 466 U.S. at

690).  Federal courts are to afford "both the state court and the defense attorney the benefit of the doubt."  *Id.* at 13.  The reasonableness of counsel's conduct must be viewed as of the time of counsel's conduct.  *See* Maryland v. Kulbicki, 136 S. Ct. 2, 4 (2015) (citing Strickland, 466 U.S. at 690).

To demonstrate prejudice under Strickland, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  For this Court's purposes, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' "  Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)).  "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  Mirzayance, 556 U.S. at 123.  It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard."  *Id.*

## Ground 1: Testimony of Larry Burns

In his first claim, Petitioner contends that the trial court erred in excluding the testimony of Larry Burns regarding alleged prior inconsistent statements of the victim. ECF No. 15 at 5. Petitioner raised this claim in his direct appeal from his convictions and sentence. Ex. O at 20-28. Respondent contends this ground lacks merit. ECF No. 17 at 18.

Petitioner contends that the trial court erred in granting the State's motion to exclude testimony of his father, Larry Burns, which his counsel proposed to present during the defense's case in an attempt to impeach the testimony of J.E.M., the victim. J.E.M., age 19 at the time of the incident, testified that she thought of Petitioner, whom she has known almost all her life, as her half-brother. Ex. G at 72 (transcript pagination). She had believed they shared the same father, Larry Burns, but her mother told her Larry was not her father. *Id.* J.E.M. testified that she and Petitioner had always gotten along well and on July 27, 2009, when he called her several times that afternoon, she agreed to "hang out" with him that evening until his girlfriend got off work. *Id.* at 74-77. She said Petitioner picked her up around 7 p.m. near her residence. He was driving what she thought was his girlfriend's car. *Id.* at 77.

They first drove to Walmart for pizza and ice cream.  *Id.* at 78.  J.E.M. testified that once they gathered their proposed purchases and got in line to pay, Petitioner said he forgot to get soda and "threw the keys" to her so she could go get the car.  *Id.* at 80.  After J.E.M. went out to the car, Petitioner went back for soda, and he also purchased some duct tape.  Ex. I at 215. J.E.M. testified that after they left Walmart, they returned to the apartment where Petitioner lived.  *Id.* at 93.  She said Petitioner began to act strangely, pacing around, turning on the shower, and then not getting in the shower.  *Id.* at 95.  She testified that Petitioner began "horse playing" with her and shoving her, and then put her hands behind her back and duct taped her.  *Id.* at 96.  She said he wrapped a lot of duct tape around her hands and around her head over her mouth against her will.  *Id.* at 96-97. J.E.M. further testified that she never had a sexual relationship with Petitioner in the past and when she realized he was not joking around, she became scared.  Ex. G at 98.  According to J.E.M., Petitioner began to talk about not being brother and sister and said, "[W]ell, if people are lying to me, if, you know, we are not real sisters and brothers then I am going to prove it to you.  And then that's when he started trying to pull my pants down" against her will.  *Id.* at 99.  She testified that he kept saying he was going to have sex with her.  She was unable to scream, but she fought and

kicked, and stomped on the floor, but he put his hand inside her vagina. *Id.*
at 100, 111. She testified she had fallen on the floor and he began pulling
down his own pants and ultimately put his penis inside her against her will.
Ex. H at 107 (transcript pagination). She testified that Petitioner also put
his mouth on her breast. *Id.* at 108.

J.E.M. testified that when she was trying to get the duct tape off her
mouth because she was starting to choke, he took the tape off her mouth
and took her into the bathroom where she was sick. *Id.* at 109. She said
after they left the bathroom, Petitioner began to take photographs of her
private parts on his cell phone while she was on the floor. She testified he
told her the photographs would be proof they had consensual sex. *Id.* at
110. At some point, J.E.M. said, Petitioner put a gun to her head but it had
a shirt over it so she could not see what kind it was.[5] *Id.* at 112. After he
was finished, he cut the tape off her hands with a knife from the kitchen.
She said he changed his clothes, but she put back on the same clothes she
had been wearing. *Id.* at 112-13. She was not sure if he ejaculated inside
her because he had difficulty maintaining an erection. *Id.* at 113.

---

[5] No gun was recovered, but BBs were found in a closet in Petitioner's residence.
Evidence was presented, and Petitioner admitted, that he owned a BB gun but, when he
testified, he said he did not know where it was.

Petitioner drove her back to where he picked her up earlier near her residence. Ex. H at 123. She called her fiancé as soon as she got out of the car and he told her to go to his mother's house, which was nearby. *Id.* at 122. J.E.M. went to her home and told her what happened. *Id.* at 123. J.E.M.'s mother arrived shortly thereafter and an ambulance and police came. *Id.* at 124. J.E.M. was taken to the hospital where she was examined. *Id.* at 125.

In the trash at the apartment where Petitioner lived, law enforcement found used duct tape in a circular pattern that looked as it had been used to bind someone. Ex. H at 189. The bundle of used tape was approximately ten feet long. Ex. I at 300. Two other pieces of used duct tape were recovered that measured approximately 21 inches and 32 inches long. *Id.* at 302. Petitioner's fingerprint was found on the duct tape bundle. Ex. J at 385. J.E.M.'s DNA was also found on the duct tape. Ex. J at 401. Petitioner's DNA was found on a swab of J.E.M.'s breast. Ex. J at 406. Petitioner testified in his own defense and said the sexual acts[6] and the duct taping were consensual and that he and J.E.M. had engaged in that type of activity before. Ex. K at 502-510. He admitted that when he gave

---

[6] He denied penetrating J.E.M. with his penis, Ex. K at 499, 561. Male DNA, but no semen, was identified as being in her vagina. Ex. J at Ex. J at 372, 398.

his statement to law enforcement in which he said he had not seen J.E.M. for several weeks, that was untrue.  Ex. K at 539; *see also* Ex. H at 202.

During J.E.M.'s testimony, when asked about the last time she saw Petitioner prior to July 27, 2009, she testified that she and Petitioner were riding around several weeks earlier when they saw Larry Burns, Petitioner's father, driving by.  She testified she "ducked down in the back seat" because Larry Burns, whom she thought of like a father, had told her not to "hang around" Petitioner.[7]  Ex. H at 117, 132.  J.E.M. testified that after the incident in question, her mother was speaking to Larry Burns on the telephone and J.E.M. was nearby.  *Id.* at 120.  On cross-examination, defense counsel asked her whether she ever said that she was duct taped the day that she was riding around with Petitioner and saw Larry Burns, and she denied having done so.  Ex. H at 136-37.

After the State rested and the trial court denied Petitioner's motion for judgment of acquittal, defense counsel sought to present the testimony of Larry Burns to say that during the telephone call with J.E.M.'s mother, he heard J.E.M. say that she was "duct taped" in the back of Petitioner's vehicle on that earlier occasion.  Ex. K at 440.  Counsel indicated this

---

[7] J.E.M. testified earlier that she preferred to ride in the back seat of an automobile due to having been in a serious accident while riding in the front seat earlier in her life.  Ex. H at 116.

testimony was to be presented as impeachment to J.E.M.'s in-court

testimony that she was not duct taped in Petitioner's car on that occasion.

Counsel argued that the testimony was material to the issue of whether the

duct taping said to have been done in the charged offense was actually

consensual, although he denied he was offering it for other than

impeachment.  Ex. K at 440, 446, 461.  The trial court excluded the

testimony, ruling that the impeachment value of Larry Burns' proposed

testimony was de minimis, provided the potential for confusion and possible

misleading of the jury under the provisions of section 90.403, Florida

Statutes, and did not relate to a material fact.  Ex. K at 462-63.  The court

also concluded, after a counsel's verbal proffer and extensive argument,

that the "primary purpose here is not the correct one."  *Id.* at 463.

The proposed testimony was then proffered on the record by

examination of Larry Burns, in which he testified he saw Petitioner several

weeks before July 27, 2009, the date of the offense.  Ex. K at 465. They

were each driving down the street and Larry Burns pulled over.  He said

Petitioner parked and came over to his car.  Larry did not see J.E.M. in

Petitioner's car at that time.  He later had a telephone conversation with

Wanda Hollinger, Petitioner's mother, after Petitioner was arrested in which

he said J.E.M. also participated.  Larry testified that J.E.M. said she was in

the car with Petitioner when they stopped on the road. *Id.* at 467. Larry

Burns testified on proffer that when he asked her why she did not see or

speak to him that day, she first said that if he saw her with Petitioner he

"would have probably thought something was going on." Ex. K at 468. He

then testified that she also said "she was duct taped in the car and she

couldn't" come over to talk to him. *Id.* Petitioner raised as error the

exclusion of Larry Burns' testimony on direct appeal, primarily as a state-

law evidentiary issue, but also making reference to denial of due process.

The state First District Court of Appeal affirmed without explanation.

The Respondent in this proceeding contends that the claim is without

merit because it is questionable whether an inconsistent statement was

even shown and because defense counsel was attempting to introduce the

testimony primarily as substantive evidence to rebut J.E.M.'s testimony that

being duct taped was not consensual. ECF No. 17 at 15-16. The

Respondent further contends that state court evidentiary rulings will not

provide a basis for relief in federal habeas proceedings unless the ruling

was so critical to the outcome of the trial that it renders the trial

fundamentally unfair. ECF No. 17 at 17.

A defendant has a due process right to present witnesses to defend

against the State's accusations, Chambers v. Mississippi, 410 U.S. 284,

294 (1973), and that due process right can supersede application of state evidentiary rules where that evidence contains sufficient indicia of reliability and directly affects that ascertainment of guilt or innocence.  Even so, the Court in Chambers, in engaging in a very specific, fact-intensive analysis, explained that the decision does not "signal any diminution in the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and procedures."  *Id.* at 302-03.  The question is whether the implementation of the state criminal trial rule or procedure deprived the defendant of a fair trial.  *Id.*  The defendant is not deprived of a fair opportunity to defend against the State's accusations simply because critical evidence favorable to him is excluded, but "erroneous evidentiary rulings can, in combination, rise to the level of a due process violation."  Montana v. Egelhoff, 518 U.S. 37, 53 (1996).  As to evidentiary issues, "state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials."  Holmes v. South Carolina, 547 U.S. 319, 324 (2006) (quoting United States v. Scheffer, 523 U.S. 303, 308 (1998)).  The Court in Holmes stated:

> While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed

by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury.

*Id.* at 326.

The state district court of appeal affirmed exclusion of Larry Burns' testimony on direct appeal. That adjudication is entitled to AEDPA deference. *See* Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1346 (11th Cir. 2013) ("It is well settled that state court adjudications are entitled to AEDPA deference even if they are unaccompanied by opinions.") (citing Pinholster, 563 U.S. at 188). Moreover, a state trial court's evidentiary rulings do not provide a basis for federal habeas relief absent a showing that the ruling affected the fundamental fairness of the trial. *See* Sims v. Singletary, 155 F.3d 1297, 1312 (11th Cir. 1998). A Petitioner must show that the ruling was more than merely erroneous; it must have had " 'substantial and injurious effect or influence in determining the jury's verdict.' " Brecht v. Abrahamson, 507 U.S. 619, 623 (1993) (applying the harmless error standard for federal habeas review of constitutional error set forth in Kotteakos v. United States, 328 U.S. 750, 776 (1946)). On federal habeas corpus review regarding a state court's decision to admit or exclude evidence, the court will "determine only 'whether the error, if any, was of such magnitude as to deny petitioner his right to a fair trial.' " Hill v. Sec'y, Florida Dep't of Corr., 578 F. App'x 805, 810 (11th Cir. 2014) (unpublished)

(quoting <u>Futch v. Dugger</u>, 874 F.2d 1483, 1487 (11th Cir. 1989)).  Petitioner has not shown that the trial court's exclusion of this evidence was incorrect or that it deprived him of a fundamentally fair trial.

Section 90.608, Florida Statutes, provides that any party may attack the credibility of a witness by introducing statements of the witness that are inconsistent with the witness's present testimony.  § 90.608(1), Fla. Stat. (2010).  Under that statute, "introduction of a prior statement that is inconsistent with a witness's testimony is also one of the main ways to attack the credibility of a witness."  <u>Pearce v. State</u>, 880 So. 2d 561, 569 (Fla. 2004) (citing § 90.608(1), Fla. Stat.).  *See also* <u>McCray v. State</u>, 919 So. 2d 647, 649 (Fla. 1st DCA 2006).  "To be inconsistent, a prior statement must either directly contradict or be materially different from the expected testimony at trial.  The inconsistency must involve a material, significant fact rather than mere details."  <u>Pearce</u>, 880 So. 2d at 569 (citing <u>State v. Smith</u>, 573 So. 2d 306, 313 (Fla. 1990)).

Under Florida law, the prior statements offered as impeachment are admissible "only for that purpose unless it is independently admissible on other grounds."  <u>State v. Smith</u>, 573 So. 2d 306, 313 (Fla. 1990).  The purpose of admitting the prior inconsistent statements is to test the credibility of the witness.  *Id.*  Statements offered for impeachment may not

be used as substantive evidence. *Id.* Also under Florida law, a trial judge's ruling on the admissibility of evidence will not be disturbed absent a clear abuse of discretion. *See* <u>Delhall v. State</u>, 95 So. 3d 134, 155 (Fla. 2012); <u>Valle v. State</u>, 70 So. 3d 530, 546 (Fla. 2011).

The trial judge in this case concluded that the impeachment value of Larry Burns' testimony was de minimis and was outweighed by possible unfair prejudice. Under section 90.403, Florida Statutes, the trial court may exclude relevant evidence if the court determines that the probative value is outweighed by danger of unfair prejudice, confusion of the issues, or the potential to mislead the jury. § 90.403, Fla. Stat. (2010). In the present case, the trial court also determined that the evidence was not sought to be introduced solely for impeachment purposes, but was proposed to be introduced to show that J.E.M. had been duct taped by Petitioner in the past with her consent in order to prove that the duct taping and sexual activity on the day of the offense was also consensual, as Petitioner testified. Petitioner has not shown how the proposed testimony would have seriously impaired the credibility of J.E.M. to such an extent that he would have been acquitted.

For all these reasons, the adjudication of the trial court, and the appellate court in affirming, were not unreasonable. "[H]abeas corpus is a

'guard against extreme malfunctions in the state criminal justice systems,'
not a substitute for ordinary error correction through appeal." Richter, 562
U.S. at 102-03 (quoting Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979)
(Stevens, J., concurring in judgment)).  "A state prisoner must show that
the state court's ruling on the claim being presented in federal court was so
lacking in justification that there was an error well understood and
comprehended in existing law beyond any possibility for fairminded
disagreement."  *Id.* at 103 (citation omitted).

Petitioner has failed to show that even if the trial court erred in
excluding the impeachment evidence, the ruling was so lacking in
justification that no fairminded jurist could disagree that there was a
constitutional error that deprived him of a fundamentally fair trial.
Accordingly, Petitioner has failed to demonstrate that the state court
adjudication resulted in a decision that was contrary to, or an unreasonable
application of, federal law as determined by the Supreme Court, or was an
unreasonable determination of the facts in light of the state court record.
Ground 1 should be denied.

## Ground 2: Testimony of Wanda Hollinger

Petitioner next contends that the trial court erred in excluding the
testimony of Wanda Hollinger regarding the alleged prior inconsistent

statement of the alleged victim that she was duct taped in the back of Petitioner's car a week or so before the incident for which he was charged. ECF No. 15 at 8. Petitioner made similar arguments for admission of Hollinger's testimony as he did for the admission of the testimony of Larry Burns in Ground 1 above. Counsel indicated to the trial court that, based on a pretrial deposition, if Hollinger testified in court that J.E.M. did not say she was duct taped in the back of Petitioner's car several weeks prior to the incident in question, he would impeach Hollinger with her deposition statement that J.E.M. said she was duct taped but that she got out of the tape. Ex. K at 443. Counsel also argued that if Hollinger testifies as she did in the deposition—that she did not mean to say that and was confused—then counsel proposed to present her deposition testimony to her and ask her to explain it. *Id.* Counsel was asked if Hollinger had any other relevant testimony to offer and counsel responded that she was the person who called 911 "but that's a totally separate issue." *Id.* at 444. The trial judge entered the same ruling excluding Hollinger's impeachment testimony as he did relative to Larry Burns' impeachment testimony.

On proffer, Wanda Hollinger, J.E.M.'s mother, testified in pertinent part as follows:

> Q. [defense counsel]: Okay. What I want to do is specifically right now is ask you some questions about a phone

conversation. Um, first of all, do you recall a phone conversation with yourself and Mr. Larry Burns where [J.E.M.] chimes in and started talking about a week prior being in Mr. Burns' neighborhood?

A. Yes.

Q. You do recall the conversation I am speaking about?

A. Yes.

Q. Do you recall what she said during that conversation?

A. Yeah.

Q. What did she say during that conversation?

A. She had told him that do he remember when Aaron ran to his truck out there by his house and he said yeah, and she said she was in the back seat ducked down.

Q. You are saying she said she was ducked down?

A. Yes.

Q. Okay. Do you recall providing a deposition back in January?

A. Yes.

Q. I am going to show you a specific piece, I want you to read it. I am not asking you to read it out loud, just to yourself, and I will point out where I am referring to here. Starts right here and finished up on line 13. Read that page and a half, half page, and let me know when you are done. Finishing up there on line 13, Page 8. You can keep it up there.

What I want to do is I am going to read off a portion of this and then I will ask you some questions to follow up, okay?

Starting on Page 7, I asked you: Mr. Burns has provided some deposition testimony about a month ago to the affect (sic) that he talked to [J.E.M.] over the phone. I don't know if he gave an exact period of time but it was definitely after the incident here in July. Your response was: He was talking to me and hearing [J.E.M.] over - - then stopped. I followed with the question: Right, and basically he said that [J.E.M.] told him that she was duct taped in the car, in Mr. Aaron Burns' car about a week prior to this July 28th date, and she was in - -

Your response, it was. I said, okay. You said, yeah. I said but do you know what I am talking about? You said, yeah, but she said she got out of that duct tape. I am saying it's, it's basically what, I don't know what you are trying to ask me, I don't know.

Now would you agree there that you said initially she got out of the duct tape, correct?

A. Yeah, that was during, no, she was trying to get out of the duct tape when he had her.

Q. Okay, I am not sure I understand what your response was.

A. We were talking about when he did whatever he did to her prior to that conversation, so it was when basically the duct tape was during what he did to her the day before.

Q. Are you talking about July 27th now?

A. Yes.

Q. But do you understand that she's testified she didn't get out of that duct tape?

A. No, she tried to get out, and that's when she said he put a gun to her head.

Q. But would you agree here she said she got out of the duct tape; not tried to get out of the duct tape? Nowhere in your statement do you say she tried to get out of the duct tape; you said she got out of the duct tape, correct?

A. I guess. That's what - -

Q. I am sorry, I couldn't hear you.

A. I said what you said, I did, yeah.

MR. BOGLE: No further questions, Your Honor.

Ex. K at 472-474. The testimony was excluded for the reasons discussed in Ground 1. The issue was raised as error in the direct appeal, and the state First District Court of Appeal affirmed. This ruling is entitled to AEDPA deference.

The defense sought to present Hollinger's testimony about the telephone call primarily to impeach her with her statements in the deposition. This is improper under Florida law, which prohibits calling a witness for the sole purpose of impeachment. In addition, just as discussed in Ground 1 regarding the proposed testimony of Larry Burns, the trial court determined that the evidence was not sought to be introduced solely for impeachment purposes, but was proposed to be introduced to show that J.E.M. had been duct taped by Petitioner with her consent. Moreover, the testimony, and her explanation of her prior statements, were confusing, provided minimal impeachment value, and ran the risk of confusing the jury, as the trial court found.

Under Florida law, a witness may not knowingly be presented with the primary purpose of impeaching the witness by introduction of a prior statement. Morton v. State, 689 So. 2d 259, 264 (Fla. 1997), receded from on other grounds by Rodriguez v. State, 753 So. 2d 29 (Fla. 2000). In determining whether the testimony should be allowed, the trial court may consider whether the impeachment of the witness was of de minimis value. Senterfitt v. State, 837 So. 2d 599, 600 (Fla. 1st DCA 2003). Another factor to be considered in allowing the testimony is whether the witness's testimony surprised the party calling the witness. The record reflects that

defense counsel expected Hollingsworth to testify that J.E.M. did not say she was duct taped in the back seat of Petitioner's car.  No surprise was present in her testimony when she testified on proffer.

Where the witness gives relevant testimony of probative facts in dispute in addition to the impeachment, the totality of the testimony may be proper.  *See* Wade v. State, 156 So. 3d 1004, 1021-22 (Fla. 2014). However, when Hollinger was called by the defense to testify before the jury, she was not asked to give relevant testimony on any probative facts in dispute.  Ex. K at 486-489.  Thus, under Florida law, the state court's adjudication of this claim was correct, as reflected by the affirmance of the state district court of appeal.

Under Florida law, a trial judge's ruling on the admissibility of evidence will not be disturbed absent a clear abuse of discretion.  *See* Delhall, 95 So. 3d at 155; Valle, 70 So. 3d at 546.  The trial judge in this case reasonably concluded that the impeachment value of Wanda Hollingsworth's testimony was de minimis and was outweighed by possible unfair prejudice, under section 90.403, Florida Statutes, which provides a basis to exclude the testimony if the court determines that the probative value is outweighed by danger of unfair prejudice, confusion of the issues, or the potential to mislead the jury.  § 90.403, Fla. Stat. (2010).

As discussed in Ground 1, although a defendant has a due process right to present witnesses and defend against the charges, when evidence is excluded the question in federal habeas review is whether the implementation of the state criminal trial rule or procedure deprived the defendant of a fair trial. Chambers, 410 U.S. at 302-03. The defendant is not necessarily deprived of a fair opportunity to defend against the State's accusations simply because critical evidence favorable to him is excluded, and it is only when erroneous evidentiary rulings rise to the level of a due process violation that constitutional error occurs. *See* Egelhoff, 518 U.S. 37, 53 (1996). The "state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." Holmes, 547 U.S. at 324 (quoting Scheffer, 523 U.S. at 308). The Constitution prohibits the exclusion of defense evidence under rules that serve no legitimate purpose, but well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by unfair prejudice, confusion of the issues, or potential to mislead the jury. *See id.* at 326. In the present case, the trial court ruled that the impeachment value of Wanda Hollinger's proposed testimony was de minimis, did not relate to a material fact, and provided the potential risk of confusion and misleading of the jury. Ex. K at 462. The record supports

this finding. Moreover, Petitioner has not shown the exclusion to be

pursuant to an evidentiary rule that serves no legitimate purpose.

Petitioner has failed to show that the trial court's evidentiary ruling

excluding the proposed impeachment testimony was unreasonable,

incorrect, or deprived him of due process and a fundamentally fair trial. For

all these reasons, the adjudications of the trial court and the appellate court

in affirming were not unreasonable or contrary to any federal law as

determined by the Supreme Court. Nor was the adjudication an

unreasonable determination of the facts under the requirements of 28

U.S.C. § 2254(d). Ground 2 should be denied.

## Ground 3: Failure to Grant a New Trial

Petitioner argues that the trial court erred and should have granted

him a new trial on Counts 1 and 2 instead of adjudicating him guilty of a

lesser included offense as to Count 1 pursuant to Florida Rule of Criminal

Procedure 3.620 and leaving the conviction and sentence for Count II

intact. ECF No. 15 at 10.

Petitioner, pro se, filed a motion for post-conviction relief under

Florida Rule of Criminal Procedure 3.850. Ex. T at 1-44. In granting relief

on one ground, the trial court found trial counsel was ineffective in failing to

argue the insufficiency of evidence at trial to prove sexual battery of a

physically incapacitated person pursuant to section 794.011(1)(j), Florida Statutes. Ex. U at 121. The trial court granted relief on the claim and set forth the remedy, stating in pertinent part:

> [T]he remedy is not to grant the Defendant a new trial but to adjudge the Defendant guilty of sexual battery. *See* Wallace v. State, 66 So. 3d 1086 (Fla. 3d DCA 2011); Fla. Stat. § 974,011; Std. Jury Instructions in Crim. Cases 11.2. Therefore, the Defendant is entitled to be resentenc[ed] on the lesser included offense of sexual battery.

Ex. U at 141. Prior to implementation of the remedy, Petitioner appealed the order and the state First District Court of Appeal affirmed per curiam without explanation on August 27, 2013. Ex. W. Petitioner did not file a brief in the appeal of the Rule 3.850 proceeding, but none was required. Under Florida law, the district court was required to consider all possible means of relief. *See* Fla. R. Crim. P. 9.141(b)(2)(C). Thus, as Respondent contends, in affirming the trial court's rulings in the Order Denying in Part and Granting in Part Motion for Postconviction Relief," the appellate court necessarily affirmed the remedy articulated by the trial court. Ex. U at 137.

Petitioner's judgment of conviction was subsequently amended as to Count 1, to find Petitioner guilty of the lesser included offense of sexual battery, nunc pro tunc to May 27, 2010. Ex. II at 781. He was resentenced on Count 1 to 15 years in prison, with his life sentence for Count 2, kidnapping, remaining unchanged. Ex. HH at 783-87. At the resentencing

hearing on January 27, defense counsel again argued unsuccessfully that the proper remedy would be a new trial.  Ex. II at 813.  Petitioner appealed the revised judgment and sentence to the state First District Court of Appeal, arguing that in spite of Florida precedent that supported the trial court's entry of judgment of the lesser offense supported by proof at trial, the appellate court should reverse for a new trial on both counts.  Ex. JJ at 4.  The State, in its answer brief, contended that the issue was foreclosed by the law of the case because it was necessarily considered by the appellate court in affirming Petitioner's appeal from the order on his Rule 3.850 motion.  Ex. MM at 8.  The state district court of appeal affirmed without explanation.  Ex. NN.

Petitioner contends here that state court's refusal to grant a new trial on both counts "violates due process and is otherwise contrary to law." ECF No. 15 at 10.  He further contends, as he did in the appeal from resentencing, that because Petitioner was acquitted of sexual battery with a deadly weapon, there was a failure of proof at to an essential element— intent to terrorize—required for conviction of kidnapping under Count II. The Respondent counters that the claims raised in this Ground are state law claims not based on a violation of the Constitution or laws or treaties of the United States.  ECF No. 17 at 24.  The Respondent also contends that

no federal claim was raised in the state courts, thereby foreclosing federal habeas relief in this court, and regardless, is without merit. *Id.* at 25-26.

In ruling as it did, the trial court was following state law precedent. The state First District Court of Appeal affirmed, thus rejecting the claim that reversible error occurred in resentencing Petitioner on Count I, leaving Count II unchanged, and in not granting a new trial on either count. No federal claim was raised in the state courts. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions," and "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle, 502 U.S. at 67-68. *See also* Swarthout, 562 U.S. at 221 (reiterating that a "mere error of state law" is not a denial of due process). This limitation on review of purely state law issues applies with "equal force" when a petition couches the state law issue in terms of equal protection and due process. *See* Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988).

The state courts followed state law in finding the evidence sufficient to support a conviction for sexual battery, and in finding that the remedy was not a new trial. Rule of Criminal Procedure 3.620 provides as follows:

> When the offense is divided into degrees or necessarily
> includes lesser offenses and the court, on a motion for new

trial, is of the opinion that the evidence does not sustain the verdict but is sufficient to sustain a finding of guilt of a lesser degree or of a lesser offense necessarily included in the one charged, the court shall not grant a new trial but shall find or adjudge the defendant guilty of the lesser degree or lesser offense necessarily included in the charge, unless a new trial is granted by reason of some other prejudicial error.

The Florida Supreme Court has explained:

> Reduction of an offense to a necessarily included offense by an appellate court is consistent with the authority of a trial judge to consider the sufficiency of the evidence upon a motion for a new trial. In that circumstance, if the trial court finds the evidence does not sustain the verdict for the offense charged but does sustain a finding of guilt of an offense necessarily included, the trial court must adjudge the defendant guilty of the necessarily included offense.[FN 5]
>
>> [FN. 5] Fla. R. Crim. P. 3.620. Rule 3.620 is substantially the same as former section 920.06, Florida Statutes (1969), which was repealed by chapter 70-339, section 180, as having been superseded by the rule.
>
> Absent prejudicial error, a new trial is not required because the defendant has been afforded fair notice of the charge against him and the opportunity to prepare an adequate defense. There is no prejudice because, in defending against the greater offense, which encompasses each element of the lesser offense, the defendant has inevitably defended against the necessarily included offense

Goddard v. State, 458 So. 2d 230, 234 (Fla. 1984). *See also* Wallace v. State, 66 So. 3d 1086, 1088 (Fla. 3d DCA 2011); Slack v. State, 30 So. 3d 684, 688 (Fla. 1st DCA 2010); Michelson v. State, 927 So. 2d 890, 892-93 (Fla. 4th DCA 2005).

In this case, the jury was instructed as to sexual battery as a lesser included offense of the charged offense in Count I. Petitioner was on notice of the lesser offense and defended against it by testifying that his conduct on the day in question was consensual and, thus, no sexual battery of any sort occurred. The trial court, by following Rule 3.620, and by following Florida precedent that required the trial court to reduce the conviction to a lesser included offense of sexual battery, did not deny due process to Petitioner.

As to the second aspect of Petitioner's claim, there is no basis to conclude that because Petitioner was acquitted of sexual battery with a weapon and sexual battery on a person physically incapacitated, this meant that the elements necessary for Count 2, kidnapping were not present. Section 787.01, Florida Statutes (2009), provided in pertinent part as follows:

> (1)(a) The term "kidnapping" means forcibly, secretly, or by threat confining, abducting, or imprisoning another person against her or his will and without lawful authority, with intent to:
>
> 1. Hold for ransom or reward or as a shield or hostage.
>
> 2. Commit or facilitate commission of any felony.
>
> 3. Inflict bodily harm upon or to terrorize the victim or another person.
>
> 4. Interfere with the performance of any governmental or political function.

§ 787.01(1)(a)1.-4., Fla. Stat. (2009).  Count II charged that Petitioner

violated section 787.01(1)(a) in that he did "forcibly, secretly or by threat,

confine, abduct or imprison [J.E.M.], against that person's will, with the

intent to inflict bodily harm or to terrorize."  Ex. A at 38.  It is not necessary

for the sexual battery to have been accomplished with a deadly weapon to

satisfy these elements.  The Florida Supreme Court has held that

confinement of a victim after they voluntarily entered a vehicle was

sufficient to prove kidnapping with the intent to inflict bodily harm or

terrorize the victim, even where the victim in that case was not bound.

Boyd v. State, 910 So. 2d 167, 184 (Fla. 2005); *see also* Conahan v. State,

844 So. 2d 629, 636-37 (Fla. 2003) (holding evidence sufficient to prove

kidnapping even if victim went willingly and initially consented to being tied

up).  In the present case, J.E.M. entered the apartment willingly and was

subsequently bound and confined against her will by Petitioner.  This

evidence was sufficient under Florida law to satisfy the elements of the

Florida kidnapping statute, without the necessity of Petitioner being found

guilty of use of a deadly weapon in the offense.

    The Eleventh Circuit in Johnson v. Alabama, 256 F.3d 1156 (11th Cir.

2001), has explained that in evaluating the sufficiency of the evidence to

sustain a conviction on federal habeas review, the Court asks whether after

reviewing the evidence in a light most favorable to the prosecution, any

rational trier of fact could have found the petitioner guilty beyond a

reasonable doubt.  *Id.* at 1172.  The federal court must defer to the

judgment of the jury in weighing the evidence.  *Id.*  The Eleventh Circuit

also explained in United States v. Funt, 896 F.2d 1288 (11th Cir. 1990):

> In reviewing a challenge to the sufficiency of the evidence this
> court must take the evidence in the light most favorable to the
> government.  Hamling v. United States, 418 U.S. 87 (1974).
> Credibility choices and the weighing of evidence must be
> resolved in favor of the jury's verdict.  Glasser v. United States,
> 315 U.S. 60 (1942).  In short, so long as a reasonable juror
> could conclude that the evidence, viewed with all reasonable
> inferences drawn in favor of the government, established the
> defendant's guilt beyond a reasonable doubt, then the
> conviction will withstand a sufficiency challenge.

*Id.* at 1291-92 (some citations omitted).  The Eleventh Circuit further

explained, "[T]he question is whether reasonable minds could have found

guilt beyond a reasonable doubt, not whether reasonable minds must have

found guilt beyond a reasonable doubt."  United States v. Broughton, 689

F.3d 1260, 1276 (11th Cir. 2012) (quoting United States v. Bacon, 598 F.3d

772, 775 (11th Cir. 2010) (quoting United States v. Ellisor, 522 F.3d 1255,

1271 (11th Cir. 2008)) (emphasis in original omitted).  In this case, the jury

could reasonably find that confining and binding J.E.M. with threats to do

acts on her against her will satisfied the "intent to inflict bodily harm or to

terrorize" element of kidnapping.

The trial court's action in imposing the remedy required by Rule 3.620 was correct under Florida law.  Petitioner has not shown a violation of federal due process or any other constitutional right as required by 28 U.S.C. § 2254(d).  Accordingly, he has failed to demonstrate that the adjudication resulted in a decision that is contrary to, or involving an unreasonable application of, federal law as determined by the Supreme Court or that resulted in an unreasonable determination of the facts in light of the record.  Ground 3 should be denied.

### Ground 4: Ineffective Assistance of Counsel as to Speedy Trial

Petitioner contends in this ground that his state and federal Constitutional rights to speedy trial were violated, thereby entitling him to dismissal of the case and discharge from custody.  He argues in the alternative that trial counsel rendered ineffective assistance in failing to timely move for speedy trial after the speedy trial time period had expired, thus depriving him of his Sixth and Fourteenth Amendment rights.  ECF No. 15 at 12.

Petitioner was arrested on July 28, 2009, Ex. A at 1, and first charged by Information on August 28, 2009.  Ex. A at 8.  He contends that the 175 day speedy trial period provided by Florida Rule of Criminal Procedure 3.191 expired on January 19, 2010.  Trial counsel filed a notice of

expiration of speedy trial on February 2, 2010. Ex. A at 20. Jury trial commenced with voir dire on February 15, 2010. Ex. C at 1. Petitioner contends that in addition to Florida's speedy trial protections, he is also entitled to a speedy trial under the Sixth Amendment of the federal constitution. ECF No. 15 at 12.

A violation of speedy trial was not presented on direct appeal from Petitioner's convictions and sentence.[8] *See* Ex. O. In Petitioner's Rule 3.850 motion, he contended that his trial counsel provided ineffective assistance by failing to demand speedy trial and by failing to file a notice of expiration of speedy trial expeditiously. Ex. T at 9. He argued to the trial court that the delay after the expiration of speedy trial allowed the State additional time within which to prepare for trial, and that if counsel had moved for discharge, there is a reasonable probability that he would have been granted discharge. ECF No. 15 at 10-12.

The trial court denied the claim, concluding that Petitioner could not show prejudice, stating:

---

[8] Petitioner failed to present a constitutional speedy trial violation to the state trial court, and did not present any speedy trial claim on direct appeal from his convictions and sentences. Thus, that aspect of his claim is unexhausted and procedurally defaulted, without any showing of a basis to excuse the default. Accordingly, discussion of this ground will focus on the ineffective assistance of counsel claim he presents as an alternative argument, which was presented in his Rule 3.850 proceeding in the state courts.

This claim lacks merit.  The record reflects that during an October 27, 2009, pre-trial conference . . . the Defendant requested and was granted a continuance.  (Pretrial conference Tr. at 3.)  It is well-established that "when a defendant requests a continuance prior to the expiration of the applicable speedy trial time period for the crime with which he is charged, the defendant waives his speedy trial right as to all charges which emanate from the same criminal episode."  Stewart v. State, 491 So. 2d 271, 272 (Fla. 1986).  Had defense counsel moved for discharge on speedy trial grounds as the Defendant alleges, the motion would have been denied based on the October 27 continuance.  Accordingly, the Defendant cannot show he was prejudiced by counsel's actions and this claim is denied.

Ex. U at 138, 155 (motion for continuance).  Petitioner appealed from denial of post-conviction relief and the state First District Court of Appeal affirmed without explanation.  Ex. W.

Petitioner contends in his § 2254 petition that the request for continuance did not waive his speedy trial rights because the trial date was continued to a date within the 175-day speedy trial period—an argument for which he presented no citation to authority—and because he is entitled to a speedy trial under the state and federal Constitutions.  ECF No. 15 at 12.  The post-conviction court was correct that, under Florida law, Petitioner's motion to continue trial waived the speedy trial right under the rule.  The Florida Supreme Court in Stewart v. State, 491 So. 2d 271 (Fla. 1986), stated:

> As the district court correctly stated, when a defendant requests a continuance prior to the expiration of the applicable

speedy trial time for the crime for which he is charged, the defendant waives his speedy trial right a to all charges which emanate from the same criminal episode.

*Id.* at 272.  *See also* State ex rel. Butler v. Cullen, 253 So. 2d 861, 868 (Fla. 1971) ("When the [defense] continuance was granted, the time limitations in the rule were no longer applicable and the Court had the right and authority to set the case for trial within a reasonable time.").  "In the absence of the time limitations in the Speedy Trial rule, the right to a speedy trial is necessarily relative."  *Id.*

In the state court, Petitioner relied primarily on the purported failure to comply with Rule 3.191 and the passage of a certain number of days. However, the constitutional right to a speedy trial is not measured by a certain number of days but by tests of reasonableness and prejudice.  *See* Vermont v. Brillon, 556 U.S. 81, 89-90 (2009).  Trial was held within a few weeks of the expiration of the state speedy trial deadline.  Petitioner alleges that this fairly brief delay allowed the State additional time to prepare for trial, but he does not identify any specific actions that the State took during that time period that the State would have been unable to accomplish if trial had been held several weeks earlier.  The claim of prejudice by delay is not supported in the record.

Moreover, as the state court held, even if counsel should have more expeditiously filed the notice of expiration of the speedy trial period and demanded a speedy trial, there is no reasonable probability in light of settled Florida law that the trial court would have granted the demand for discharge based on failure to provide a trial within time frame set by the state rule. The trial court's adjudication denying the ineffective assistance of counsel claim is entitled to AEDPA deference. Further, "[t]he question 'is not whether a federal court believes the state court's determination' under the <u>Strickland</u> standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " <u>Mirzayance</u>, 556 U.S. at 123 (quoting <u>Schriro</u>, 550 U.S. at 473). The <u>Strickland</u> standard is a general standard; thus, a state court has greater latitude to reasonably determine that a defendant has not satisfied that standard. <u>Mirzayance</u>, 556 U.S. at 123. The state court's denial of this claim was reasonable and based on settled state law. Under the constitutional standard, the fairly minimal delay has not been shown to have been unreasonable under the circumstances or prejudicial to defendant.

Petitioner has failed to establish entitlement to federal habeas relief under 28 U.S.C. § 2254(d). Therefore, relief on Ground 4 should be denied.

## Ground 5: Counsel's Failure to Ensure Removal of Biased Juror

Petitioner contends that his Sixth Amendment right to trial by an impartial jury was violated due to the presence of a biased juror. To support this claim, he contends that Juror T expressed views concerning Petitioner taking the stand to defend against the charges, which views later made it necessary for him to testify instead of maintaining his right to remain silent. ECF No. 15 at 15. A form of this claim was raised in a petition for writ of habeas corpus alleging ineffective assistance of appellate counsel for not raising as fundamental error on appeal that the allegedly biased juror was allowed to sit on the jury. EX. PP. Petitioner now contends first that the trial court should have, *sua sponte*, removed the juror. Alternatively, Petitioner contends that his trial counsel rendered ineffective assistance by failing to ensure removal of the alleged biased juror after hearing the juror's comments. ECF No. 15 at 14.

During trial, defense counsel did not move to strike Juror T for cause or seek to exercise a peremptory challenge as to Juror T. *See* Ex. C at 352-68. No claim of error was presented on direct appeal concerning Juror T. *See* Ex. O. In the state habeas petition alleging ineffective assistance of appellate counsel, Petitioner argued that appellate counsel provided ineffective assistance by failing to raise the trial court's failure to *sua sponte*

strike the juror as fundamental error. Ex. PP at 5-6. The state appellate

court denied the petition on the merits. Ex. QQ. *See* Burns v. State, 141

So. 3d 1253 (Fla. 1st DCA 2014).

No claim of ineffective assistance of trial counsel pertaining to Juror T

was raised in the state trial court in the Rule 3.850 motion or in the state

appellate court on appeal from denial of post-conviction relief. *See* Exs. T,

W. Petitioner now contends in his amended § 2254 petition that he did not

raise the ineffectiveness claim in his Rule 3.850 motion because he was

pro se and was not aware of the constitutional violation at the time. ECF

No. 15 at 16. Assuming without deciding that Petitioner's petition for

habeas corpus in the state appellate court adequately exhausted the first

prong of his Ground 5 claim—that his Sixth Amendment right to trial by an

impartial jury was violated due to the presence of a biased juror, resulting in

a fundamentally unfair trial—that aspect of his claim in Ground 5 will be

discussed first.

The voir dire colloquy that forms the basis of this ground is as follows:

> MR. BOGLE [defense counsel]: And that's the next issue
> that I want to address. Is, if the Judge were to provide you with
> an instruction saying that you're not supposed to hold it against
> Mr. Burns if he weren't to testify, would you follow that
> instruction? Or is that just something you just, yes, ma'am?
>
> JUROR [T]: That's something that I don't feel like I could
> determine the answer to at this time. When it comes to, if all

the evidence, if the State has given all the evidence and I don't have any question, then I wouldn't necessarily have to hear from Mr. Burns. But I feel like if we got to the end of this trial and I still feel like he needed to defend what the State was saying or, then that would come at that point. I don't like to prejudge and say, yes, I would have to hear - -

MR. BOGLE: Right, I understand what you're, I think I understand what you're saying is that if [the prosecutor] puts on a case and you feel like if Mr. Burns didn't testify that, you know, he proved his case beyond a reasonable doubt and I didn't hear anything from Mr. Burns to prove otherwise, is that what you're saying?

JUROR T: Yes.

MR. BOGLE: Yes, and I think that's correct. I don't think there's any problem with that. I guess what I was getting at is, if you felt that, well, maybe they didn't prove their case beyond a reasonable doubt but Mr. Burns didn't testify so that makes me kind of wonder.

JUROR T: Well, that would make me, that would be one loose (sic), not the evidence to help me make a final decision.

MR. BOGLE: Right, but, are you comfortable with the idea though that Mr. Burns does have the right to remain silent?

JUROR T: Yeah.

MR. BOGLE: And if they don't' prove the case independent of that, that's what you have to decide basically?

JUROR T: Exactly.

MR. BOGLE: Okay, all right.

Ex. C at 327-28. Petitioner contends that these foregoing answers by Juror

T during voir dire prove that the juror was biased. ECF No. 15 at 15. In

support of both his Sixth Amendment claim and his ineffective assistance of

trial counsel claim, Petitioner contends that the juror's comments required him to testify rather than remain silent, thus demonstrating prejudice.

The Sixth and Fourteenth Amendments guarantee all criminal defendants an impartial jury. *See* Brown v. Dep't of Corr., 348 F. App'x 526, 527 (11th Cir. 2009) (unpublished) (citing Morgan v. Illinois, 504 U.S. 719 (1992)). "In determining whether a juror is impartial, '[i]t is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.' " *Id.* at 527-28. The juror's statements in this case do not demonstrate any actual bias against the Petitioner that would prevent her service as an impartial juror. *See* United States v. Wood, 299 U.S. 123, 133-34 (1936).[9] Under the actual bias standard, the defendant must demonstrate that the juror in question was not impartial— that is, that the juror was biased against the defendant or in favor of the prosecution—and the evidence of bias must be plain on the face of the record. *See, e.g.*, Smith v. Phillips, 455 U.S. 209, 216 (1982) (rejecting claim of implied bias and stating, "Preservation of the opportunity to prove

---

[9] A juror may be challenged for "implied bias," which has been described as a "conclusive presumption" that a juror is biased "based exclusively on 'the relationship between a prospective juror and some aspect of the litigation.' " *See* Cutts v. Smith, 630 F. App'x 505, 508 (6th Cir. 2015) (unpublished) (quoting United States v. Frost, 125 F.3d 346, 379 (6th Cir. 1997)). "Implied bias" has not been alleged in this case, and whether the "implied bias" doctrine is clearly established for AEDPA purposes has been questioned. *See id* (and cases cited therein).

actual bias is a guarantee of a defendant's right to an impartial jury.").

Conflicting or ambiguous answers by a prospective juror concerning ability

to be impartial does not necessarily demonstrate actual bias. Patton v.

Yount, 467 U.S. 1025, 1038-40 (1984). The Supreme Court explained In

Yount:

> The testimony of each of the three challenged jurors is
> ambiguous and at times contradictory. This is not unusual on
> voir dire examination, particularly in a highly publicized criminal
> case. It is well to remember that the lay persons on the panel
> may never have been subjected to the type of leading
> questions and cross-examination tactics that frequently are
> employed, and that were evident in this case. Prospective
> jurors represent a cross section of the community, and their
> education and experience vary widely. Also, unlike witnesses,
> prospective jurors have had no briefing by lawyers prior to
> taking the stand. Jurors thus cannot be expected invariably to
> express themselves carefully or even consistently.

Id. at 1038-39 (1984). Similarly, in this case, Juror T's answers were at

worst ambiguous, but did not clearly exhibit bias. See also Murphy v.

Florida, 421 U.S. 794, 801-03 (1975) (finding after response, upon

presupposing a lengthy trial and failure to put on a defense, that the juror

might be predisposed to convict did not demonstrate juror's lack of

impartiality).

The Constitution guarantees a panel of "impartial, indifferent jurors."

Turner v. Louisiana, 379 U.S. 466, 471 (1965). The record does not

demonstrate that Juror T was anything other than impartial and indifferent

as to Petitioner.  Nor does the record show that the juror would be unable to set aside any impressions or opinions and render a fair verdict on the evidence.  As the excerpts of voir dire show, the juror initially indicated a desire to hear from the defendant, although Juror T also agreed and recognized that Petitioner had a right to remain silent.  These expressions by the juror do not indicate the juror could not lay aside any preconceived notion of guilt and render a verdict based on the evidence.  In fact, Juror T stated, "I don't like to prejudge."  Ex. C at 327.  The juror also confirmed that the State must prove its case independent of any testimony, or lack thereof, by Petitioner.  *Id.* at 328.

Petitioner contends that the trial judge should have, *sua sponte*, removed the juror.  Even where the juror's answers are equivocal concerning their desire that the defendant testify or present evidence, the trial court has no duty to *sua sponte* remove the juror unless the error is "so conspicuous that the 'judge and prosecutor were derelict in countenancing it.' "  U.S. v. Simmons, 961 F.2d 183, 186 (11th Cir. 1992) (quoting United States v. Bonavia, 927 F.2d 565, 570 (11th Cir. 1991)).  The juror's answers in this case, while somewhat equivocal in places, did not present such an obvious constitutional error of impartiality such that the trial court had the duty to *sua sponte* remove the juror.  Moreover, in light of no

motion by defense counsel, the trial judge had no way to know if counsel preferred to leave this juror on the jury rather than risk a less desirable juror sitting—especially if the trial court did not view the juror's answers as being any indication of bias.

The issue of trial court error in regard to Juror T was raised in Petitioner's petition for habeas corpus in the state appellate court, alleging fundamental error, which was rejected as being without merit. The state appellate court found no basis in the record to demonstrate that this juror's presence on the jury deprived Petitioner of a fundamentally fair trial. That adjudication is entitled to AEDPA deference and has not been shown to be unreasonable. Habeas relief on this aspect of Petitioner's Ground Five should be denied. We turn next to the second prong of his claim—that trial counsel rendered ineffective assistance in failing to challenge the juror for cause or peremptorily.

This claim of ineffective assistance was not raised in the trial court. Petitioner alleges in his petition that he failed to allege it in his Rule 3.850 motion because he was not aware of the alleged error at that time. ECF No. 15 at 16. Respondent argues that the claims in this ground are unexhausted and procedurally defaulted because the claim he raises here is not the same claim he raised in the state courts. ECF No. 17 at 29.

As noted earlier, to exhaust the claim in the state courts, the Petitioner must have apprised the state courts of the federal constitutional claim, not just the underlying facts of the claim or a "somewhat similar state-law claim." Snowden, 135 F.3d at 735 (quoting Harless, 459 U.S. at 5-6). Petitioner must "fairly present" his federal claim in each appropriate state court in order. Picard, 404 U.S. at 275.

Petitioner failed to present his ineffective assistance of counsel claim in the state court and it is therefore unexhausted and procedurally defaulted. To obtain review under these circumstances, the Petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice. Engle, 456 U.S. at 129. To demonstrate cause, Petitioner must show that an external impediment prevented him from raising the claim. Alderman, 22 F.3d 1551. In the present case, Petitioner has cited no external impediment that prevented him from raising this claim of ineffective assistance of counsel in the state court.

Nor has he shown that federal review of the defaulted claim is necessary to correct a fundamental miscarriage of justice. *See* Murray, 477 U.S. at 495-96. The Petitioner must show that a constitutional violation has occurred that "probably resulted in a conviction of one who is actually

innocent," which is a stronger showing than is necessary to establish prejudice. *See* <u>Schlup</u>, 513 U.S. at 327. Such a case is "extremely rare." *Id.* at 324. Because Petitioner has not shown cause and prejudice for the default, has not shown a constitutional error, and has not shown that this claim is a rare case that has resulted in the conviction of one who is actually innocent, the claim is defaulted and habeas relief may not be granted.

Notwithstanding the default, the claim lacks merit. As the voir dire colloquy shows, this juror expressed no bias against Petitioner, and conceded that he had a right to remain silent and not testify—and confirmed that the State must prove the charges beyond a reasonable doubt without regard to his decision not to testify. Petitioner has not demonstrated that trial counsel was deficient in failing to move to excuse Juror T. Petitioner contends that the juror's comments forced him to testify, although the testimony he gave was exculpatory and provided the jury with an alternate view of the evidence and an opportunity to acquit him if they found him credible. He has failed to show how the mere fact of his testimony was prejudicial to his case.

Moreover, at the conclusion of the trial, the jurors were instructed that the State had the burden to prove each charge beyond a reasonable doubt,

and that Petitioner is presumed innocent and is not required to prove anything. Ex. K at 591, 596. The court defined the term "reasonable doubt" for the jury. Ex. K at 596. The court also instructed the jury that "[i]f you find that no offense has been proven beyond a reasonable doubt then, of course, your verdict must be not guilty." *Id.* Jurors are presumed to follow the law as instructed by the court and to comply with their oath. Hallford v. Culver, 459 F.3d 1193, 1204 (11th Cir. 2006); United States v. Ramirez, 426 F.3d 1344, 1352 (11th Cir. 2005). Without evidence that Juror T was actually biased, the court must presume that the juror followed the judge's instructions impartially and required the State to prove Petitioner's guilt beyond a reasonable doubt, without requiring Petitioner "to prove anything."

Thus, even if Petitioner had exhausted this ineffective assistance of counsel claim in state court, it was without merit and denial of it would not have provided a basis for federal habeas relief in this court. For all the foregoing reasons, Petitioner has failed to show a violation of his right to an impartial jury. He has also failed to demonstrate that the state court adjudication resulted in a decision that was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court or that the

adjudication was based on an unreasonable determination of the facts.
Both prongs of Petitioner's Ground Five should be denied.

### Ground 6: Counsel's Failure to Impeach Victim

In his last claim, Petitioner contends his trial counsel rendered ineffective assistance by failing to impeach the victim with prior inconsistent statements that were alleged to be material to the defense. ECF No. 15 at 16. Petitioner contends that trial counsel should have impeached J.E.M.'s trial testimony that she was in Petitioner's car with him several weeks before the charged incident and that she "ducked down" in the back seat when they encountered his father Larry Burns on the side of the road. ECF No. 15 at 18. Petitioner contends that in a pretrial deposition, J.E.M. testified, when asked about the last time she saw Petitioner prior to the charged incident, that "I think it was about two weeks" before when Petitioner came over to her mother's house and they "sat there" without going anywhere. ECF No. 15 at 18.

At trial, J.E.M. testified that the last time she saw Petitioner prior to the day of the offenses was "about a week, two weeks ago." Ex. H at 116. She said he came to her mother's house and picked her up to go riding around. *Id.* During that ride, she testified, they encountered Larry Burns, who was driving his car. *Id.* at 117. Petitioner contends that her trial

testimony was in direct contradiction to her deposition testimony
concerning whether she left her mother's house that day with Petitioner.
ECF No. 15 at 18. Petitioner contends that if counsel had impeached her
with this prior inconsistent deposition testimony, J.E.M. would have been
forced to explain and "would have been forced to admit that she was, in
fact, engaging in sexual role-playing with Petitioner and that their activities
on the day of the alleged offense was consensual and therefore, not a
crime." ECF No. 15 at 18. He also contends that if J.E.M. had been
impeached, "it would have provided a clear path for the admission of the
testimony of Larry Burns . . . and . . . Wanda Hollinger." *Id.* Petitioner
concedes in his § 2254 petition that this claim was not exhausted in the
state courts because he was pro se and did not become aware of the claim
until the filing of his amended petition. *Id.*

Respondent counters that this claim was added when Petitioner was
given leave to file an amended petition, but that the new claim is untimely
for not having been filed within the § 2244(d)(1) one-year period of
limitation and does not relate back to the timely-filed original petition.
Under federal habeas law, an application for a writ of habeas corpus
generally "may be amended or supplemented as provided in the rules of
procedure applicable to civil actions." 28 U.S.C. § 2242; *see also* Rule 12,

Rules Governing § 2254 Cases (providing that the Federal Rules of Civil Procedure may be applied when appropriate and "when not inconsistent with these rules"); <u>Williams v. Chatman</u>, 510 F.3d 1290, 1293 (11th Cir. 2007).

Federal Rule of Civil Procedure 15(c)(1)(B) provides that an amended complaint, in this case an amended habeas corpus petition, relates back to the original pleading when it arises "out of the same conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Although this court interpreted the relation-back provision broadly in the past, the Supreme Court's decision in <u>Mayle v. Felix</u>, 545 U.S. 644 (2005), explains that the interpretation must be more restricted. Under <u>Mayle</u>, a new claim in an amended petition relates back, and thus avoids a limitations bar, only when it arises from the same "common core of operative facts" as a claim contained in the original petition. *Id.* at 664. It is not enough that the new argument pertains to the same trial, conviction, or sentence. "When the nature of the amended claim supports specifically the original claim, the facts there alleged implicate the original claim, even if the original claim contained insufficient facts to support it." <u>Ciccotto v. United States</u>, 613 F. App'x 855, 859 (11th Cir. 2015) (unpublished) (quoting <u>Dean v. United States</u>, 278 F.3d 1218, 1222 (11th Cir. 2002)).

The amended claim in this case relates to the common core of operative facts Petitioner alleged in his Grounds 1 and 2 of the initial § 2254 petition, involving J.E.M.'s testimony that she was in Petitioner's car several weeks before the charged incident. Petitioner contends that the nature of the amended claim would support his original claims concerning Larry Burns and Wanda Hollinger. For these reasons, Ground 6 of the amended habeas petition is not subject to dismissal as being untimely filed.

Even though not untimely, the claim is unexhausted and procedurally defaulted. The claim of ineffective assistance of counsel was not raised in the state courts. Petitioner's explanation that he was unaware of the claim until the filing of the amended § 2254 petition does not satisfy the requirements that, to excuse the procedural default, Petitioner must show cause for the default and prejudice therefrom. He alleges no external impediment prevented him from raising the claim. *See* <u>Alderman</u>, 22 F.3d 1551. His allegation of prejudice also fails. He contends that if counsel had impeached J.E.M. with her deposition testimony that the last time she saw Petitioner was at her mother's house, and not while driving around with him as she testified at trial, she would have been forced to admit she had earlier engaged in sexual role-playing with Petitioner and thus was doing so on the day of the alleged offenses. The logic of this allegation is not

apparent, and the allegation does not demonstrate prejudice from counsel's failure to impeach J.E.M. with this specific deposition testimony.

In the present case, Petitioner has cited no external impediment that prevented him from raising this claim of ineffective assistance of counsel in the state court. Nor has he provided a basis to conclude prejudice flowed from the alleged error of counsel. Procedural default may be excused if necessary to correct a manifest injustice, as discussed in Ground 5, but Petitioner has failed to make that showing as well.

Regardless of the procedural default, the claim lacks merit. Petitioner has failed to show a reasonable probability that, but for the alleged error of counsel, the result of the proceeding would have been different—a reasonable probability being one sufficient to undermine confidence in the outcome. 466 U.S. at 694. Petitioner has shown no reasonable probability that inconsistent statements about whether J.E.M. rode around in the car with Petitioner two weeks before the charged offense, or saw him only in her mother's home, would have impaired her credibility sufficient for the jury to disbelieve the remainder of her detailed testimony concerning events of the day in question. The impeachment evidence would not have been admissible as substantive evidence and would not, as Petitioner

alleges, have forced J.E.M. to admit that the sexual conduct and confinement by duct tape on the day of the incident was in fact consensual.

For all the foregoing reasons, Petitioner has failed to show that he is "in custody in violation of the Constitution or laws or treaties of the United States" as required by 28 U.S.C. § 2254(a). Ground 6 should be denied.

## Conclusion

Based on the foregoing, Petitioner Aaron Burns is not entitled to federal habeas relief. Accordingly, the amended § 2254 petition (ECF No. 15) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S.

473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." The parties shall make any argument as to whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied. *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the amended § 2254 petition (ECF No.15). It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on April 25, 2017.

**S/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

Case No. 5:15cv65-RV/CAS

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**